By the Court.—Sanford, J.
The complaint alleges that the services of the plaintiff, for which he seeks compensation, were rendered in and about the custody and preservation of the estate of defendants’ intestate, after his decease, but at his request as well as at theirs ; and that they, in their capacity of administrator and administratrix, promised to pay him therefor. If such services were rendered at the request of the defendants, and not at that of their intestate, the action should have been brought against them in their individual, and not in their representative capacity. For, as was well observed by Freedman, J., when this case was formerly before the court, contracts of executors and administrators, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, moving between their promisee and themselves, are their personal contracts and do not bind the estate (citing Austin v. Munro, 47 N. Y. 360; Ferrin v. Myrick, 41 Id. 315; Cary v. Gregory, 38 N. Y. Superior Ct. 127).
If, however, a valid contract was, in fact, made with the plaintiff by the deceased, the action may be maintained in its present form, and it may be averred in one count or statement of the cause of action, that both the intestate and his personal representatives promised to pay (Benjamin v. Taylor, 12 Barb. 328). There is, *29 however, no authority for joining a cause of action founded upon the contract of an intestate with one founded upon the contract of his personal representatives. In the case last cited, but one contract was set forth, and that was with the testator. No contract with the executor was alleged. Here the averment is that plaintiff’s services were performed at the request both of the intestate and of the defendants, and that both promised to pay for them. There was, therefore, a misjoinder of alleged causes of action, assuming that a cause of action founded upon a valid contract of the intestate is sufficiently set forth.
At the trial no evidence was offered tending to show either a request or promise, made by or on behalf of the defendants or either of them ; and the plaintiff relied solely on the promise, which he claimed as an implication of law, that the defendants would pay for services rendered their intestate’s estate after his decease, upon his request made in his lifetime.
The recovery, therefore, is to be sustained, -if at all, upon the theory, that one may bind his legal representatives for a consideration not1 moving to himself, but to them, and, by a contract, which in its nature and by its terms, is not susceptible of performance by, or of enforcement against, himself; and upon the further theory, that one may delegate to a person or persons, other than those whom the law designates for that purpose, the care, custody and safe keeping of his property after death, not by last will and testament, executed in the manner and with the solemnities prescribed by law, but informally and by mere word of mouth.
The general principle, doubtless, is that for any cause of action arising upon a contract valid in its inception as against the contractor, suit may be maintained against his executor or administrator, irrespective of the question whether such cause of action *30 actually accrued and became susceptible of enforcement in his lifetime, or not until after his decease.
But contracts may be made upon which no cause of action can arise against the personal representatives of the contractor after his decease. As, for instance, where the contract is purely personal to the deceased, and can, of necessity, be performed according to the intentions of the parties by no one else. The case of an author, who undertakes to write a specified literary work ; or of a musical composer, who agrees to compose an opera or oratorio ; or of an artist, who promises to paint a portrait, affords an apt and pertinent illustration. In each of these cases the undertaking is personal to the contractor, and can be performed, within the intent of the parties, by no one else. The legal maxim “ actio personalis moritur cum persona” is in such case to be invoked and applied. But, in any case, a contract must be valid as between the parties to it, and must be supported by a good and sufficient consideration, as between them, in order to be sustained and to be susceptible of enforcement between their legal representatives, or between either of them, and the' legal representatives of the other, as no contract can bind the legal representatives of a deceased person, which is not valid and binding upon himself. A contract founded upon an illegal consideration, or supported by no consideration whatever, would bind neither the parties to it nor their legal representatives.
So, if a contract be void as against good morals, or as in conflict with the established policy of law, it can be enforced by neither of the parties to it; and their respective executors or administrators acquire no rights- and incur no liabilities under or by value of it. I am of opinion, that a contract such as is alleged in the complaint as having been made between the plaintiff and defendant’s intestate is void, as between the parties to it, for want of consideration and mutuality; *31 and also as conflicting with the settled policy of the law which governs and controls the transmission and devolution of the estates of deceased persons, and the custody and control of such estates upon and after the decease of their original owners. The power of directing, within certain limits, what disposition shall be made of his property after his decease, is accorded by the sovereign power, the people, to every person of suitable age and of sound mind and memory (2 R. S. 60). But that power must be exercised by will, in writing, and not otherwise, excepting in the case of Soldiers in actual military service, and mariners at sea. And every last will and testament must be executed and attested as the law prescribes, or it will have no force or validity whatsoever. According to the older authorities of the ecclesiastical law, the appointment of an executor was essential to a testament, and was said to be its substance, head, true formal cause, and very foundation (Williams on Executors, * 7). Indeed, the common law judges laid down the rule, in Woodward v. Lord Darcy (Plowd. 185), that “without an executor a will is null and void.”
That rule was long since abrogated, and a will may now appropriate the testator’s estate, and apportion it among the objects of his bounty, without specifying the particular individual who shall assume the duty of executing it. On the other hand, the mere nomination of an executor, without legacy or bequest, or direction as to which disposition he shall make of the estate, is sufficient to constitute a will, and, as a will, such nomination must be probated (Williams on Executors,* 124). But in all cases where the custodian of the estate is not nominated by will, the law reserves to itself the right and power of appointment, and charges any one who intermeddles with the goods of the deceased as for a trespass or tortious act, committed in his own wrong. Such intermeddlers or intruders *32 were formerly known and dealt with, as executors de son tort; but that office or function is now abolished in this State, by statute. Any person, however, who takes, receives or interferes with the property or effects of a deceased person, is regarded as a trespasser, and is responsible, as such, for the value of the property or effects so taken or received, and for all damages caused by his acts to the estate (2 R. S. 449, § 17).
There are acts which a stranger may perform without subjecting himself to the hazards of such tortious liability,—such as locking up the goods for preservation, directing the funeral and defraying its expenses out of the effects of the decease, feeding his cattle, or providing necessaries for his children,—for these, it is said, are offices of kindness and charity, Any assumption of exclusive authority, control, or right of disposition, however, is a trespass, and may be treated as such by an executor, or general or special administrator, when qualified, notwithstanding the pretext of a license, power of attorney, or special request from the decedent in his lifetime. At the moment of death, eo instanti, the legal title to personalty vests, by operation of law, in the personal representatives of the deceased. Letters testamentary and of administration relate back from the date of their issue, to the date of the death of the testator or intestate, and no one claiming to act as the agent or attorney of a deceased person can demand or retain personal assets by a right paramount to that conferred by such letters.
It was conceded on the argument that the plaintiff could not have retained possession of the deceased’s box of securities for an hour, after demand from the defendants, when once their title was established by their letters of administration. And yet, as will shortly appear, the contract, if such it can be called, between the plaintiff apd their intestate, authorized and required him to retain the control of the property, not merely *33 until it should be demanded by them, but until one James Gray should arrive from Ireland. And the principle upon which the contract is to be maintained, if at all, would, a#s it seems to me, sanction and sustain an arrangement whereby the legal rights and powers of executors and administrators would be subordinated to the instructions of their testator or intestate, orally imparted to a stranger. The contract now in question, if it meant that anything should be done after the death of the intestate, meant that the plaintiff should retain the control of the defendants’ property, not merely until the defendants should demand its delivery, but until a contingency should occur, which might be in the remote future, and indeed, which might never occur at all. ■ It is manifest that the defendants ■were under no obligation to accede to the terms, or to permit the performance of any such contract as that; nor Can I perceive any good ground upon which they should be required to recognize or respect it at all. It' lacked at least one of the essential elements which underlie the validity of all contracts. It was without mutuality, and as between the parties to it, no consideration moved from either to the other. The intestate might equally well have instructed the plaintiff to purchase or sell property for account of his estate, after his decease, and the plaintiff’s promise to do so, would, on the same principle, have raised an implied promise on the part of the defendants to abide by his action and compensate him therefor.
But the evidence in the case does not, in my j udgment, establish the making of any such contract between the plaintiff and the defendants’ intestate, as that alleged in the complaint; nor any request on the part of said intestate for the rendition of any service to be performed after his decease.
It appeared at the trial that on March 4, 1872, the plaintiff, who was then, and for eleven years had been, *34 the confidential clerk of defendants’ intestate, and, as such, entrusted not only with the possession, care and custody of his securities, but, to a large extent, with their legal title and apparent ownership, brought to the house of said intestate from its accustomed place of deposit, in the vault of the Bank of the State of New York, the tin box in which his securities, consisting of bonds, railroad stocks, mining stocks, &c., &c., were usually kept. The plaintiff, in his capacity of clerk, had repeatedly had the care and custody of the box before, and had previously taken charge of these securities. They had been entrusted to his care for weeks at a time. He was the only clerk of the intestate ; he did all his business ; he had always been the custodian of the box in transferring it to and from the bank. The value of the securities in the box was about $1,200,000. A large portion of them then stood in the name of the plaintiff, and were transferable by him. When the box was brought up, defendants’ intestate had the key. He opened it, told the plaintiff to separate the securities to the extent of $500,000, and to get another box and put James Gray’s securities in it. Plaintiff did separate the securities as directed, under the supervision of his employer, who specified which securities were to go to James Gray. After the separation was effected, under the supervision of the intestate, all the securities were put back into the box. Intestate locked it, handed the key to the plaintiff, and “told him to take charge of the box and to put it in the Safe Deposit Company, until James Gray arrived from Ireland.” ”
This is all that was said on the subject. There was no reference to the condition of intestate as at all precarious in respect to the contingencies of life and death; nothing to indicate that he did not himself expect to survive until the contingency of Gray’s arrival should occur. These words alone constitute the re *35 quest, upon which, as the plaintiff insists, a promise on the part of the defendants is in law to be implied that they would compensate him for services to be rendered in and about the care, custody and preservation of their intestate’s estate after his decease.
This interview occurred on March 4,1873. Intestate was in fact in a low condition of health at the time,, though evidently capable of attending to business.
He died, two days afterwards, March 6, 1873. The box remained at his house until his death. The plaintiff then took possession of it; removed it to his own house, it being too late to take it to the Safe Deposit. Company on that day. The next day he carried it back to the house of the deceased, but, subsequently, between one and two o’ clock, took it down to the Safe Deposit Company and put it in there; hired a safe, . and put the box in with its contents. It remained there from March 8 to March 14, when it was handed over to the defendants, who had then qualified as the legal representatives of its deceased owner.
Upon this state of facts, as disclosed by the evidence, a motion was made for the dismissal of the complaint, as well on the ground that the averments of the complaint in respect to the employment of the plaintiff by the deceased were not sustained by the proof, as upon the ground already considered, viz., that it was not competent for the decedent to enter into a contract with the plaintiff for the care and custody of Ms estate from and after his decease.
I am of opinion that the motion should have been granted, and that the exception to its denial was well taken, on both the grounds urged.
The same question, however, substantially, was again presented by exceptions taken to the charge of the court, and to his refusal to charge as requested; and it will perhaps be more convenient to consider the evidence, as bearing upon the question of a contract, *36 in connection both, with the charge and with the ruling of the court in refusing to dismiss the complaint.
After evidence had been adduced on the part of the defense, relating mainly to the value of the plaintiff’s alleged services, the court charged, in effect, among other things, that if defendant’s intestate, in view of his situation and for the purpose of taking proper steps to secure his estate, called on the plaintiff to take charge of his estate, at Ms death, and he did take charge of it, he is entitled to compensation for the risk, although previously employed at a moderate salary ; for the contract with respect to such previous employment ceased with the life of the intestate ; and it is precisely at that point of this case that the new contract arises.
He further charged, that when the plaintiff took charge of the box, services were rendered which entitled him to compensation, and that the question whether there was a contract must be answered adversely to the defendants. To these portions of the charge exception was taken, and the defendants also excepted to the refusal of the court to charge, as requested, that the contract as testified to terminated at the death of the intestate. In response to such request the court had charged that the contract commenced on the death of the intestate, to which proposition exception was also taken.
These exceptions, in connection with that taken at the close of the plaintiff’s case to the refusal of the court to dismiss the complaint, clearly raise the question whether any promise on the part of the defendants or their intestate, that the plaintiff should receive compensation for services to be performed in and about the custody of his estate after his decease, can be implied from what occurred at the interview between them on March 4.
*37 There being no conflict of evidence as to what occurred on that occasion, the question would seem to be one for the court and not for the jury, though it is not entirely clear that the learned judge at the trial so regarded it. A portion of the charge indicates that he at first proposed to submit to the jury, the question whether or not the intestate, in view of his situation, and for the purpose of taking steps to secure his estate, called on the plaintiff to take charge of the box, at his death. The fair purport of the charge, however, taken as a whole, is such that it must be deemed to withdraw from the jury, this, and all other questions, except that of the value of the services rendered by the plaintiff and the amount of the compensation to which he was entitled, for the jury were distinctly instructed that the question raised by the counsel for the defendants, as to whether or not there was a contract, must be answered against his view; and they were as distinctly charged, that when the plaintiff took charge of the box, services were rendered, for which he was entitled to compensation. Defendants’ counsel requested the court to charge, that in order to entitle the plaintiff,to recover, the jury must be satisfied that it was the intention of the intestate to enter into a new and independent contract, a,nd that the direction given to him was not intended to be given in the course of his existing employment. To this request the court responded as follows : “I have already said that it was for them to say what he intended.” To the refusal of the court to charge as requested, defendants’ counsel excepted. As already intimated, I am of opinion that in the absence of conflict or contradiction in regard to the facts of the case, the question, whether the defendants’ intestate is to be deemed to have requested the plaintiff to perform services for his estate, after his decease, and also whether any promise to compensate the plaintiff therefor is to be im *38 plied from such request, if made, are questions of law. Upon these questions the case was the same when the plaintiff rested and the motion for non-suit was made, as when finally submitted to the jury.
If the facts are not such as to warrant the inference, that in directing his clerk to deposit his box in the Safe Deposit Company, the intestate contemplated a service the performance of which was not to be immediate, but which was only to be contingent upon and to follow after his death, the complaint should have been dismissed. For it cannot be doubted that the transfer of the box to and from its appropriate place of deposit, and its care and custody during such transfer, were within the scope of the plaintiff’s existing employment, and were among the regular and accustomed duties which he was most frequently required to perform.
There was nothing in the language of the intestate to indicate that he contemplated the retention of the box at his place of residence during the remainder of his life ; and nothing in the evidence, save the fact that he did die two days afterwards, tends to show that he was in extremis, or that he apprehended his own immediate demise. Indeed, his expressed purpose of having the box remain in the Safe Deposit Company until Gray should arrive, would indicate that he expected to survive that event,—since he must be presumed to have known that in the event of his death, it would be the right and the duty of his legal representatives to take it into their possession,—and to dispose of its contents in due course of administration. It would have been altogether at variance with the habitual prudence and caution that had previously characterized the action of both the plaintiff and his employer, that a tin box, susceptible of easy demolition or depredation, and containing over a million of dollars in securities, largely negotiable, should be left *39 lying around for an indefinite period, or should not, at once, be consigned according to their established usage, to some safe depository. And, therefore, it seems incredible that the direction given to the plain-'d fE could import a purpose to defer such consignment, during the then uncertain period of the intestate’s life, or could have any other than a present and immediate significance and effect. The words used are clearly susceptible of a construction which would give them immediate effect. They were such as the intestate would, naturally, have used, had he contemplated and designed an immediate deposit of the box in the Safe Deposit Company, irrespective of any question of his life or death. I think it would be doing violence to their ordinary and true import and significance to interpolate among them any such expression as “.after my death,” or equivalent phraseology.
The policy of the law regards with extreme solicitude and suspicion any parol disposition of property causa mortis ; and particularly where such disposition is to take effect only in case of, and after death. If any valid disposition of it, even with respect to its care and custody, can be effectively made, otherwise than by the observance of those testamentary attestations which the statute of wills requires, the purpose and intention of the owner should be established by the clearest and most indubitable evidence, and without any resort to conjecture or surmise. In the present case the alleged purpose of the intestate to devolve upon the plaintiff, the care and custody of his property upon his death and thereafter, rests only in conjecture and surmise. Indeed, in my opinion, the evidence so clearly indicates the intestate’s purpose that immediate action should be taken with respect to the deposit of . the box in the Safe Deposit Company, while he lived, as to withdraw his intention in that regard from the *40 realm of conjecture, and to fix it within the bounds of reasonable certainty.
If such was the import of the intestate’s direction to the plaintiff, the duty devolved upon him was within the scope of his existing employment, and its performance entitled him to no compensation in excess of that thereby provided.
Entertaining no doubt that such is the only construction which can be given to the language used, I am of opinion that the complaint should have been dismissed on this ground, as well as on that first considered ; but if the matter be doubtful, the defendants were at least entitled to have the question- of their intestate’s meaning fairly and distinctly submitted to the jury, substantially in accordance with the terms of their request. I do not think this was done. The question of intestate’s meaning, if it can be deemed to have been submitted to the jury at all, by the learned judge in his charge as delivered, was in effect predetermined by specific instructions as to the law of the case, by which such submission was accompanied or followed. For the learned judge instructed the jury, as matter of law, that the question of contract or no contract, “raised by the learned counsel for the defendant, must be answered against- his view of that question.” It can hardly be asserted that a question of fact is submitted to a jury for their determination when they are at the same time instructed how, as matter of law, that question “must be answered.” The charge, throughout, assumed that there must be a recovery in favor of the plaintiff. “ When Mr. Boss, therefore, took possession of the box,” the learned judge observed, “there were services rendered, for which I must say to you he was entitled to compensation.” Again, he added, “It is true enough that what Mr. Boss did may be summed up as having been done in a few hours, but after all, he is entitled to compensation.” Still again, he remarked, *41 “You should give what he is entitled to for the discharge of this sacred trust, which was put into his hands, and for the fidelity with which he discharged it.” Finally, after discussing at considerable length, the nature of that trust and the great responsibility involved in its execution, the court leaves the case to their consideration, in the assurance that they will be able to reach a decision “as to the proper amount which should be rendered.”
At a still later stage of the case, when requested to charge specifically that the contract terminated upon the death of the intestate, the court refused so to do, and emphasized the refusal by adding, “ I charge that the contract commenced on the death of the intestate.” Unless, under the circumstances of the case, the language employed by defendant’s intestate must of necessity be interpreted as importing an employment of the plaintiff, to take effect upon his decease, and as raising an implied promise on the part of the defendants to compensate him therefor, there was error at the trial, for which the judgment should be reversed. As already intimated, I am of opinion, not only that such is not their necessary import, but that no such construction can be given to them, without wresting them from their ordinary sense and significance, and according to them an elasticity of meaning of which they are by no means susceptible.
But assuming that the intestate’s directions as to the deposit of the box were intended to be executed after and not before his death, it may still be the case that under and by virtue of his original employment, the plaintiff was bound to obey them. He was employed at an annual salary, payable monthly. There is no presumption that the term of his employment would be precisely commensurate with the life of his employer. If not, he was entitled to receive compensation, at the rate agreed, during the entire period fixed *42 for its continuance, irrespective of his employer’s de- ' mise in the mean time. If entitled to compensation, after the death of his employer, by virtue of his original contract of employment, he was under the reciprocal obligation to perform, afterward, at the request or by the direction of his employer, the same services which he had previously been required to render. The burden was upon him to show the expiration of his original term of service, and a new contract by whose terms he was to be compensated in a different manner, or at a different rate.
It would seem hardly necessary, in view of the length to which this discussion has been already protracted, to assign additional reasons for setting aside this verdict, and directing a reversal of the judgment and order appealed from; but my concurrence with the learned judge, who, when the case was formerly before the court, expressed the opinion that the verdict originally rendered was excessive, is so cordial and complete, that I cannot forbear to add a few words on that subject. During a period of eleven years next preceding the death of defendants’ intestate, the defendant had almost daily performed services precisely the same as that for which he now seeks to recover, and at a regular iixed compensation of $1,000 per annum, or less. When he received the directions for his obedience to which he now asserts his right to be paid, he was still engaged in the same service at the same rate, and was apparently satisfied to continue the relation indefinitely, on similar terms. No suggestion of dissatisfaction appears to have been made by him. He proposed no new stipulation as to a different mode or rate of remuneration. His omission so to do affords some evidence of his own estimate of the value of his services. And after all, what was the nature of the service to be rendered % It required the exercise of no particular knowledge, skill, training or experience. *43 It was, one which any honest porter might well have executed, and which, within the observation of most people familiar with the conduct of business in financial circles, honest porters do very frequently perform. The court very properly charged that the responsibility of the undertaking was to be considered. He even suggested that the jury should put to themselves the question, how many men would be willing to take a million of dollars in valuable securities to their own house, and keep it one night, for any body, or for any sum. He ventured to say that- not one of the gentlemen who had testified as to the reasonable and moderate compensation which such institutions as deposit companies, trust companies, express companies, &c., &c., usually charge for assuming the custody of the securities and funds of their customers, would themselves be persuaded to take a million dollars in such property, and take it to their homes and keep it for any body. And he added, that there would be not only the risk of answering for it in money, but that a man’s whole reputation might be at stake if there was the slightest misfortune, even without fault, and the money was not forthcoming.
While it is doubtless proper, and even essential, that the responsibility attaching to services rendered should be considered in ascertaining and assessing their value, it is easy to exaggerate the degree of responsibility which such a service as that rendered by the plaintiff really involves. And while I am not disposed to impugn the charge of the learned judge as erroneous in this respect, I apprehend, and indeed am constrained to believe, that his observations may have tended, and probably did tend to impress the minds of the jury with an inordinate conception of the value of plaintiffs’ services, not only after, but possibly even before the death of his employer ; and it may be that a sense of the inadequacy of his previous compensation *44 induced them to add somewhat to the amount which would fairly remunerate him for the particular service in question. That service required ordinary prudence and care, and common honesty, but it involved no such labor and no such responsibility as the law devolves on executors, administrators, and trustees, in the performance of their respective functions as the custodians of estates. And yet the claim of the plaintiff was for but little less than the law allows to such functionaries when the funds within their custody amount to a million of dollars ; and the verdict of the jury fell but little short of the full amount of his claim. I do not think that the plaintiff’s possession of the key of the box enlarged his responsibility. He had no authority to open it after the testator’s decease, or to deal with it, if at all, otherwise than by immediately transferring it to the care find custody of the Safe Deposit Company, agreeably to the instructions he had received from his employer. Doubtless such transfer was a sacred trust, to be faithfully discharged ; but when I “ consider the plaintiff’s relations with the deceased, and that a species of moral obligation devolved upon him to discharge this duty, irrespective of any question of compensation,” I cannot but regard the verdict as excessive, and its approval as establishing a very questionable precedent. That its amount, approximately, should have received the sanction of two juries, ought not, in my judgment, to influence the action of the court, in favor of sustaining it where, as in the present case, the recovery may have been aggravated by the circumstance that the only limitation imposed upon the liberality of the jury by the judge who presided at the trial, consisted in a suggestion that their estimate of the plaintiff’s services should not be such as would incur the risk of having the court exercise its judgment in setting aside their verdict as extravagant.
As this timely warning appears to me to have been *45 utterly disregarded, I think the verdict should be set aside.
The motion to dismiss the complaint should have been granted. The verdict must be set aside, the judgment and order appealed from reversed, and a new trial granted, with costs to abide the event.
Curtis, Ch. J., concurred in the above opinion.
Freedman, J.
I agree to reverse, on the ground that the intestate’s meaning in giving the instructions as to the disposition of the securities should have been distinctly submitted to the jury as a question of fact; and upon the further ground that in any aspect of the case the verdict is excessive.